MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
JULIO CESAR IRINEO MARTINEZ AND
JOSE LUIS AURELIO PINZON(A.K.A
AXEL RODRIGUEZ), *individually and on*
*behalf of others similarly situated,*

         *Plaintiffs*,

    -against-

BISTRO 1285 INC. (d/b/a BISTRO
CATERERS), 1285 BAKERY INC. (d/b/a
PULSE RESTAURANT), BISTRO 369 FOOD
CORP. (d/b/a BISTRO CATERERS),
NICHOLAS CASTIGLIANO, GEORGE
JAMISON, and LEON MOORE
         *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b) AND RULE 23**
**CLASS ACTION**

**ECF Case**

   Plaintiffs Julio Cesar Irineo Martinez and Jose Luis Aurelio Pinzon (a.k.a Axel

Rodriguez), individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by

and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and

belief, and as against Bistro 1285 Inc. (d/b/a Bistro Caterers), 1285 Bakery Inc. (d/b/a Pulse

Restaurant), Bistro 369 Food Corp. (d/b/a Bistro Caterers) ("Defendant Corporations"), Nicholas

Castigliano, George Jamison and Leon Moore (the "Individual Defendants"), allege as follows:

## NATURE OF THE ACTION

1.    Plaintiffs are former employees of defendants Bistro 1285 Inc. (d/b/a Bistro Caterers), 1285 Bakery Inc. (d/b/a Pulse Restaurant), Bistro 369 Food Corp. (d/b/a Bistro Caterers), Nicholas Castigliano, George Jamison, and Leon Moore (collectively "Defendants").

2.    Defendants own(ed), operate (d), or control (led) two catering businesses located at 147 West 51st Street, New York, New York 10019 (hereinafter "the 51st Street location"), at 369 Lexington Avenue, New York, New York 10017 (hereinafter "the Lexington Avenue location") under the name Bistro Caterers and a restaurant located at 1285 Avenue of the Americas, New York, New York 10019 (hereinafter "the Avenue of the Americas location"). Under the name Pulse Restaurant

3.    However, the Lexington Avenue location is no longer an operating business.

4.    Upon information and belief, individual defendants Nicholas Castigliano, George Jamison and Leon Moore, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the catering services and the restaurant as a joint or unified enterprise.

5.    Plaintiffs were employed as a deli worker, a maintenance worker, food preparer, and ostensibly as a delivery worker.  However, the delivery worker was required to spend a considerable part of his work day performing non-tipped, non-delivery duties, including but not limited to various catering services duties such as, cutting vegetables, cleaning the walls, windows, the ceiling, the drain, and the machines, sweeping and mopping, inventory, preparing

dressing and salads, dishwashing, plumbing, maintenance work, deconstructing boxes, transporting and stocking deliveries that would arrive, throwing out the garbage and marinating and cooking meats, (hereafter the "non-tipped, non-delivery duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked.

7.      Rather, from approximately January 2011 until on or about December 2012, Defendants failed to maintain accurate recordkeeping of the hours worked.

8.      In addition, Defendants failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

10.     Defendants employed and accounted for Plaintiff Irineo as a delivery worker in their payroll, but in actuality Plaintiff Irineo's duties required a significant amount of time spent in non-tipped, non-delivery duties.

11.     In addition, under state law, Defendants were not entitled to take a tip credit because Plaintiff Irineo's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Irineo's actual duties in payroll records by designating him as a delivery worker instead of non-tipped employee.

13.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

- 3 -

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiffs now bring this action as a class action under Rule 23 and  seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants

- 4 -

operate a catering business located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

19.    Plaintiff Julio Cesar Irineo Martinez ("Plaintiff Irineo" or "Mr. Irineo") is an adult individual residing in Bronx County, New York.  Plaintiff Irineo was employed by Defendants from approximately 2008 until on or about January 23, 2017 at the 51st Street location and from approximately November 2015 until on or about January 2017 at the Pulse restaurant location.

20.    Plaintiff Jose Luis Aurelio Pinzon (a.k.a Axel Rodriguez) ("Plaintiff Aurelio" or "Mr. Aurelio") is an adult individual residing in Bronx County, New York. Plaintiff Aurelio was employed by Defendants from approximately January 2011 until on or about August 2012 at the Lexington Avenue location and from approximately July 2013 until on or about January 23, 2017 at the 51st Street location.

*Defendants*

21.    At all relevant times, Defendants own(ed), operate (d), or control(led) two catering businesses located at 147 West 51st Street, New York, New York 10019 and at 369 Lexington Avenue, New York, New York 10017 under the name "Bistro Caterers".

22.    Upon information and belief, Bistro 1285 Inc. (d/b/a Bistro Caterers) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 147 West 51st Street, New York, New York 10019.

23.    Upon information and belief, 1285 Bakery Inc. (d/b/a Pulse Restaurant) is a domestic corporation organized and existing under the laws of the State of New York. Upon

information and belief, it maintains its principal place of business at 1285 Avenue of the

Americas, New York, New York 10019.

24.    Upon information and belief, Bistro 369 Food Corp. (d/b/a Bistro Caterers) is a

domestic corporation organized and existing under the laws of the State of New York. Upon

information and belief, it maintained its principal place of business at 369 Lexington Avenue,

New York, New York 10017.

25.    Defendant Nicholas Castigliano is an individual engaging (or who was engaged)

in business in this judicial district during the relevant time period. Defendant Nicholas

Castigliano is sued individually in his capacity as owner, officer and/or agent of the Defendant

Corporations.  Defendant Nicholas Castigliano possesses operational control over Defendant

Corporations, an ownership interest in Defendant Corporations, and controls significant

functions of Defendant Corporations. He determines the wages and compensation of the

employees of Defendants, including Plaintiffs, establishes the schedules of the employees,

maintains employee records, and has the authority to hire and fire employees.

26.    Defendant George Jamison is an individual engaging (or who was engaged) in

business in this judicial district during the relevant time period. Defendant George Jamison is

sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations.

Defendant George Jamison possesses operational control over Defendant Corporations, an

ownership interest in Defendant Corporations, and controls significant functions of Defendant

Corporations. He determines the wages and compensation of the employees of Defendants,

including Plaintiffs, establishes the schedules of the employees, maintains employee records, and

has the authority to hire and fire employees.

27.     Defendant Leon Moore is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Leon Moore is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Leon Moore possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

28.     Defendants operate a catering business and a restaurant located in the Midtown section of Manhattan in New York City.

29.     The individual defendants, Nicholas Castigliano, George Jamison, and Leon Moore, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

30.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

- 7 -

32.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

33.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

34.    Upon information and belief, individual defendants Nicholas Castigliano, George Jamison and Leon Moore, operate(d) Defendant Corporations as either as alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a.    failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b.    defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c.    transferring assets and debts freely as between all Defendants,

    d.    operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e.    operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

    f.    intermingling assets and debts of their own with Defendant Corporations,

    g.    diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h.    other actions evincing a failure to adhere to the corporate form.

35.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

36.     In each year, from 2011 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

37.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that are used in the catering services on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

38.     Plaintiffs are former employees of Defendants who were employed as a deli worker, a maintenance worker, food preparer, and ostensibly as a delivery worker. However, the delivery worker spent a considerable amount of time performing the non-tipped, non-delivery duties described above.

39.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Julio Cesar Irineo Martinez*

40.     Plaintiff Irineo was employed by Defendants from approximately 2008 until on or about January 23, 2017.

41.     Defendants employed Plaintiff Irineo as a food preparer and maintenance worker on weekends and ostensibly as a delivery worker on weekdays.

42.    However, when ostensibly employed as a delivery worker, Plaintiff Irineo also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

43.    Although Plaintiff Irineo ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-delivery work throughout his employment with Defendants.

44.    Plaintiff Irineo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

45.    Plaintiff Irineo's work duties required neither discretion nor independent judgment.

46.    Throughout his employment with Defendants, Plaintiff Irineo regularly worked in excess of 40 hours per week.

47.    From approximately January 2011 until on or about December 2012, Plaintiff Irineo worked at the 51st Street location from approximately 5:00 a.m. until on or about 4:30 p.m. Mondays through Thursdays, from approximately 5:00 a.m. until on or about 4:00 p.m. on Fridays, and from approximately 7:00 a.m. until on or about 1:00 p.m. every other Saturday (typically 57 to 63 hours per week).

48.    From approximately January 2013 until on or about October 2015, Plaintiff Irineo worked at the 51st Street location from approximately 5:00 a.m. until on or about 4:20 p.m. Mondays through Thursdays, from approximately 5:00 a.m. until on or about 4:30 p.m. on Fridays, and from approximately 7:00 a.m. until on or about 1:00 p.m. every other Saturday (typically 57 to 63 hours per week).

49.     From approximately November 2015 until on or about March 2016, Plaintiff Irineo worked at the 51st Street location from approximately 5:00 a.m. until on or about 4:00 p.m. Mondays through Thursdays, from approximately 5:00 a.m. until on or about 4:30 p.m. on Fridays, and from approximately 7:00 a.m. until on or about 1:00 p.m. every other Saturday and at the Avenue of the America's location from approximately 4:00 p.m. until on or about 10:30 p.m. Mondays and Tuesdays (typically 68 to 74 hours per week).

50.     From approximately March 2016 until on or about January 23, 2017 , Plaintiff Irineo worked at the 51st Street location from approximately 5:00 a.m. until on or about 3:20 p.m. Mondays through Thursdays, from approximately 5:00 a.m. until on or about 3:30 p.m. on Fridays, and from approximately 7:00 a.m. until on or about 1:00 p.m. every other Saturday and at the Avenue of the America's location from approximately 4:00 p.m. until on or about 10:30 p.m. Mondays and Tuesdays (typically 66 to 72 hours per week).

51.     Throughout his entire employment, defendants paid Plaintiff Irineo his wages in cash.

52.     From approximately January 2011 until on or about December 2012, defendants paid Plaintiff Irineo $8.00 per hour for the hours worked Mondays through Fridays and $80.00 for working on Saturdays.

53.     From approximately January 2013 until on or about September 2016, defendants paid Plaintiff Irineo a fixed salary of $500.00 per week for working Mondays through Fridays and either $70.00 or $80.00 for working on Saturdays.

54.     From approximately September 2016 until on or about January 23, 2017, defendants paid Plaintiff Irineo $10 for the first 40 hours and $15 for the overtime hours worked Mondays through Fridays and $80 for working on Saturdays.

- 11 -

55.    From approximately November 2015 until on or about January 2017, defendants paid Plaintiff Irenio $9.00 per hour for the hours he worked at the Pulse restaurant location Mondays and Tuesdays.

56.    Plaintiff Irineo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

57.    In fact, from approximately January 2011 until on or about December 2012, Defendants required Plaintiff Irineo to continue working 20 minutes past his scheduled stop time four days a week and did not compensate him for the additional time they required him to work.

58.    Similarly, from approximately January 2013 until on or about September 2016, defendants required Plaintiff Irineo to work 20 minutes past his scheduled departure time Mondays through Thursdays and 30 minutes past his scheduled departure time on Fridays and did not compensate him for the additional time they required him to work.

59.    Although defendants required Plaintiff Irineo to punch in and out from Mondays through Thursdays, they did not require him to punch out on Fridays or to punch in or out on Saturdays.

60.    In addition, defendants required Plaintiff Irineo to sign a document that falsely stated he was only working 45 hours a week and was being properly paid for all hours worked in order to get his weekly pay.

61.    Further, Defendants did not provide Mr. Irineo with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked.

62.    Basically, Defendants engaged in the illegal backing in of Plaintiff Irineo's salary.

63.     Specifically, defendants took Plaintiff Irineo's weekly salary and back it into the 45 hours they falsely recorded him as working, so that he appeared to be getting an hourly rate over the minimum wage for the first 40 hours and time and a half for the five hours of overtime.

64.     Defendants falsely claimed they were granting Plaintiff Irineo 30 minute meal breaks, when in reality they only granted him 15 minutes.

65.     Plaintiff Irineo was never notified by Defendants that his tips were being included as an offset for wages.

66.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Irineo's wages.

67.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Irineo regarding overtime and wages under the FLSA and NYLL.

68.     Defendants never provided Plaintiff Irineo an accurate statement of wages, as required by NYLL 195(3).

69.     Defendants never gave any notice to Plaintiff Irineo, in English and in Spanish (Plaintiff Irineo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jose Luis Aurelio Pinzon (a.k.a Axel Rodriguez)*

70.     Plaintiff Aurelio was employed by Defendants from approximately February 2006 until on or about August 2012 at the Lexington Avenue location and from approximately July 2013 until on or about January 23, 2017 at the 51st Street location.

71.     Defendants employed Plaintiff Aurelio as a deli worker and a food preparer.

72.     Plaintiff Aurelio regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

- 13 -

Case 1:17-cv-00748-KHP   Document 1   Filed 01/31/17   Page 14 of 31

73.     Plaintiff Aurelio's work duties required neither discretion nor independent judgment.

74.     Throughout his employment with Defendants, Plaintiff Aurelio regularly worked in excess of 40 hours per week.

75.     From approximately January 2011 until on or about August 2012, Plaintiff Aurelio worked at the Lexington Avenue location from approximately 5:45 a.m. until on or about 5:00 p.m. Mondays through Fridays (typically 56.25 hours per week).

76.     From approximately July 2013 until on or about September 2015, Plaintiff Aurelio worked at the 51st Street location from approximately 6:45 a.m. until on or about 5:00 p.m. five days a week (typically 51.25 hours per week).

77.      From approximately September 2015 until on or about January 23, 2017, Plaintiff Aurelio worked at the 51st Street location from approximately 4:45 a.m. until on or about 3:00 p.m. five days a week (typically 51.25 hours per week).

78.     At all relevant times, Plaintiff Aurelio was paid his wages in cash.

79.     From approximately January 2011 until on or about August 2012, defendants paid Plaintiff Aurelio a fixed salary of $420 per week.

80.     From approximately July 2013 until on or about September 2015, defendants paid Plaintiff Aurelio a fixed salary of $550 per week.

81.     From approximately September 2015 until on or about January 23, 2017, defendants paid Plaintiff Aurelio a fixed salary of $470 per week.

82.     Plaintiff Aurelio's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

83.     Specifically, defendants regularly required Plaintiff Aurelio to start working at

least 15 minutes before his scheduled start time and did not compensate him for the additional time they required him to work.

84.    On a number of occasions, defendants required Plaintiff Aurelio to sign a document the contents of which he was not allowed to review in order to get paid.

85.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Aurelio regarding overtime and wages under the FLSA and NYLL.

86.    Defendants never provided Plaintiff Aurelio an accurate statement of wages, as required by NYLL 195(3).

87.    Defendants never gave any notice to Plaintiff Aurelio, in English and in Spanish (Plaintiff Aurelio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88.    Defendants required Plaintiff Aurelio to purchase "tools of the trade" with his own funds—including four shirts, four pairs of shoes, and six pairs of pants.

*Defendants' General Employment Practices*

89.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay and overtime compensation as required by federal and state laws.

90.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

- 15 -

91.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

91.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

92.    Defendants required all delivery workers, including Plaintiff Irineo, to perform general non-delivery, non-tipped catering services tasks in addition to their primary duties as delivery workers.

93.    Plaintiff Irineo, and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-delivery, non-tipped duties.

94.    Plaintiff Irineo and all other delivery workers were paid at the lower tip-credit rate by Defendants. However, under state law, Defendants were not entitled to a tip credit because the delivery worker's and Plaintiff Irineo's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

95.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

96.    The delivery workers', including Plaintiff Irineo's, duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general catering services work with duties, including the non-tipped duties described above.

- 16 -

97.    In violation of federal and state law as codified above, Defendants classified Plaintiff Irineo and other delivery workers as tipped employees, and paid them at the tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

98.    Defendants failed to inform Plaintiff Irineo and other fellow workers who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

99.    Defendants failed to inform Plaintiff Ireneo that his tips were being credited towards the payment of the minimum wage.

100.   Defendants failed to maintain a record of tips earned by Plaintiff Irineo for the deliveries he made to customers.

101.   Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

102.   Instead, defendants required Plaintiff Irineo to not punch out on Friday afternoons and to not punch in or out on Saturdays.

103.   In addition, defendants required Plaintiff Irineo to sign a document that falsely stated he had only worked 45 hours per week and had been paid properly for all the hours he had worked.

104.   Plaintiffs were paid their wages in cash.

105.   Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

- 17 -

106.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

107.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former workers.

108.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

109.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

110.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

111.     Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 class"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period") "FLSA and Rule 23 class Period").

112.     At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime, and spread of hours pay, and willfully failing to keep records required by the FLSA.

113.    The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

114.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

115.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

116.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

117.    There are questions of law and fact common to the Class including:

a.  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b.  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c.  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d.  Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e.  Whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f.  Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h.  What are the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

118.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

119.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

120.    The common questions of law and fact predominate over questions affecting only individual members.

121.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

122.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE MINIMUM WAGE PROVISIONS
## OF THE FLSA

123.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

124.    Defendants failed to pay Plaintiffs and the FLSA and Rule 23 class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

125.    Defendants' failure to pay Plaintiffs and the FLSA and Rule 23 class members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

126.    Plaintiffs and the FLSA and Rule 23 class members were damaged in an amount to be determined at trial.

- 22 -

**SECOND CAUSE OF ACTION**
**(VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)**

127.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

128.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

129.    Defendants' failure to pay Plaintiffs, and the FLSA and Rule 23 Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

130.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK MINIMUM WAGE ACT**

131.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

132.    Defendants paid Plaintiffs less than the minimum wage, in violation of NYLL § 652(1) and supporting regulations.

133.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) minimum wage was willful within the meaning of NYLL § 663.

134.    Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF THE OVERTIME PROVISIONS OF THE**
**NEW YORK STATE LABOR LAW)**

135.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

136.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

137.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

138.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

139.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

141.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

142.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

143.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

144.    Defendants failed to provide Plaintiffs with a written notice, in English and in

- 24 -

Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

145.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

146.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

147.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

148.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

- 25 -

**RECOVERY OF EQUIPMENT COSTS**

149.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

150.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

151.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective and Rule 23 class action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (and the FLSA and Rule 23 class members)  ;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (and the FLSA and Rule 23 class members);

- 26 -

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the FLSA and Rule 23 class members)  compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (and the FLSA and Rule 23 class members)  ;

(f)     Awarding Plaintiffs (and the FLSA and Rule 23 class members)   damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (and the FLSA and Rule 23 class members)   liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs(and the FLSA and Rule 23 class members);

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs(and the FLSA and Rule 23 class members);

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs (and the FLSA and Rule 23 class members);

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' (and the FLSA and Rule 23 class members) compensation, hours, wages and any deductions or credits taken against wages;

(l)     Awarding Plaintiffs (and the FLSA and Rule 23 class members)   damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(m)     Awarding Plaintiffs (and the FLSA and Rule 23 class members)   damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)     Awarding Plaintiffs (and the FLSA and Rule 23 class members)   liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs (and the FLSA and Rule 23 class members)   pre-judgment and post-judgment interest as applicable;

(p)      Awarding Plaintiffs (and the FLSA and Rule 23 class members)   the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.


JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.


- 28 -

Dated: New York, New York
January 31, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: /s/ Michael Faillace

Michael Faillace [MF-8436]
MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

——————

Faillace@employmentcompliance.com

January 24, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Jose Luis Aurelio Pinzon

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         24 de enero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

January 24, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Julio Cesar Irineo  Martinez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    24 de enero de 2017